IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE

WILLIAM HARRELL, on behalf of himself
and all others similarly situated,

          Plaintiff,

v.

PILOT TRAVEL CENTERS, LLC
d/b/a PILOT FLYING J,

          Defendant.

Case No. _____

CLASS ACTION
STATUS REQUESTED
JURY DEMANDED

## CLASS ACTION COMPLAINT

NOW INTO COURT comes the Plaintiff, William Harrell ("Plaintiff"), on behalf of himself and all others similarly situated, by and through the undersigned attorneys, and brings this action for breach of contract against Pilot Travel Centers, LLC ("Pilot"). This Class Action Complaint is alleged upon information and belief, except as to those allegations which pertain to the named Plaintiff, which are alleged based on the Plaintiff's personal knowledge.

### NATURE OF ACTION

1. Approximately eighteen percent (18%) of all new cars require premium motor fuel,[1] and there are over two thousand different types of cars sold annually for which the manufacturer recommends that drivers use premium motor fuel.[2]

---

[1] Norman Mayerson, *Putting Premium Gas in an Engine That Requires Regular? Stop It Now*, The New York Times (Apr. 11, 2019), https://www.nytimes.com/2019/04/11/smarter-living/premium-gas-worth-it-octane-summer-ethanol.html.

[2] *Premium Fuel Recommended*, Edmunds.com, https://static.ed.edmunds-media.com/unversioned/img/pdf/premium.gasoline/premium.fuel.recommended.101918.pdf (last accessed Mar. 9, 2023).

2. Pilot owns and operates more than 750 gas stations.

3. This action seeks redress for customers who purchased premium gas in Tennessee and paid Pilot to fill their cars with premium motor fuel ("Premium Customers") immediately after a Pilot's customer purchased lower-grade motor fuel from the same single-nozzle fuel dispensing system.

4. Pilot's gas stations are equipped with single-nozzle fuel dispensing systems that allow customers to select between three grades of motor fuel: premium, mid-grade, and regular.

5. Premium motor fuel is more expensive than regular and mid-grade motor fuel.

6. The price differential between premium motor fuel and regular motor fuel has increased over the last seven years; in 2016 the average difference between regular and premium was 47 cents per gallon, and by May 2022, the average difference was 75 cents per gallon.[3] At Pilot's gas station located at 7720 Highway 222, Stanton, TN 38069 the price differential between regular and premium motor fuel was 50 cents on December 5, 2024.

7. Premium Customers like Plaintiff agreed to pay Pilot the higher price per gallon for premium motor fuel with the understanding that they were receiving premium motor fuel from Pilot in return.

8. But that is not what happened. Instead, when Premium Customers selected the premium option at Pilot gas stations, the first gallon of fuel that was pumped into their cars regularly contained a significant amount of regular or mid-grade motor fuel. Premium Customers, therefore, paid the premium motor fuel price for a gallon that contained a significant amount of lower-grade motor fuel.

---

[3] Meghan Bragg, *VERIFY: The price difference in gas grades,* WCNC-TV (June 20, 2022), https://www.wcnc.com/article/news/verify/gas-verify-money-charlotte-wake-up-nc/275-79caa501-d631-431d-92cf-48389635bcea.

9. The reason for this disparity between what Premium Customers paid Pilot for and what they received in return is as follows. The single-nozzle fuel dispensing systems that Premium Customers used were used previously by Pilot's customers that filled their cars with regular or mid-grade motor fuel. In that event, Pilot's pumps retained a residual amount of motor fuel – typically one third of a gallon – that became part of the first gallon of motor fuel pumped into Premium Customers' cars.

10. Given that approximately seventy percent (70%) of cars require regular motor fuel,[4] during the Class Periods Premium Customers regularly paid the premium price for the first gallon of motor fuel for which they did not receive a gallon of premium motor fuel in return.

11. Pilot retains the overcharge of selling regular or mid-grade motor fuel for the price of premium motor fuel at the expense of its Premium Customers. Plaintiff and the Classes were unaware that they were paying Pilot the premium motor fuel price for lower-grade motor fuel, and expect the return of their money plus interest.

12. This action is brought by Plaintiff to remedy this wrong.

13. The sale of gasoline qualifies as a good under the Uniform Commercial Code. The UCC provides a robust framework of remedies for breach of an oral agreement for the sale of gasoline at a pump. The available remedies include cancellation and recovery of the price paid, cover and damages, damages for non-delivery or repudiation, damages for defective or non-conforming goods, specific performance or replevin, and deduction of damages from the outstanding balance. These remedies ensure that the buyer is put in as good a position as if the seller had fully performed the contract.

---

[4] Samantha Herrera, *AAA says US drivers waste $2.1 billion on premium gasoline every year*, KSL Newsradio 102.7FM 1160AM (Mar. 7, 2022), https://kslnewsradio.com/1965105/aaa-says-us-drivers-waste-2-1-billion-on-premium-gasoline-every-year/.

14. The remedies available to the plaintiff for breach of an oral contract for the sale of gasoline at a pump under the UCC within Tennessee are:

- Cancellation and Recovery of Price Paid:  Under UCC 2-7-11, the buyer may cancel the contract and recover any price paid.  This remedy is straightforward and allows the buyer to rescind the contract and reclaim any funds already expended.

- Cover and Damages:  UCC 2-7-12 allows the buyer to cover by purchasing substitute goods in the market without unreasonable delay.  The buyer can then recover the difference between the cost of cover and the contract price, along with any incidental or consequential damages.  This remedy ensures that the buyer can obtain the necessary goods and be compensated for any additional costs incurred due to the breach.

- Damages for Non-Delivery or Repudiation:  If the buyer does not cover, UCC 2-7-13 provides for recovery of damages for non-delivery or repudiation.  This section allows the buyer to claim the difference between the market price at the time of the breach and the contract price, ensuring compensation for the breach.

- Damages for Defective or Non-Conforming Goods.  Under UCC 2-7-14, if the goods delivered are defective or non-conforming, the buyer can recover damages for breach of contract.  This remedy ensures that the buyer is compensated for receiving goods that do not meet the contract specifications.

- Specific Performance or Replevin:  In cases involving unique goods, UCC 2-7-16 allows the buyer to seek specific performance or replevin.  This remedy is particularly relevant when the goods in question are unique or have special value to the buyer, making monetary damages insufficient.

- Deduction of Damages from Outstanding Balance:  UCC 2-7-17 permits the buyer to deduct damages caused by the breach from any balance of the price still outstanding.  This remedy provides a practical means for the buyer to offset their losses directly against any remaining payment obligations.

- Liberal Administration of Remedies:  UCC 1-106 mandates that remedies be administered liberally to ensure the aggrieved party is put in as good a position as if the other party had fully performed.  This overarching principle underscores the UCC's intent to provide comprehensive and effective remedies for breaches of contract.

Under the Uniform Commercial Code (UCC), even though a contract may seem incomplete or have some terms left open, it can still be considered valid and enforceable if the parties clearly

intended to form a contract and there is a reasonable basis for determining the missing terms, allowing courts to fill in the gaps based on commercial reasonableness; essentially, a contract doesn't necessarily need every detail explicitly stated to be binding.  If the sale of gasoline at the pump is a contract that is considered not enforceable, the sale or transaction is still governed by the UCC.

15.	The filing of this lawsuit and the specific notice by mail to the defendant satisfies the requirements of Tennessee Code Annotated § 47-2-607(1)(3) that a plaintiff notify the seller of a breach within a reasonable time.  The defendant has been aware of the problem contained in the complaint for decades.  Defendants have had actual and constructive knowledge for decades.  The product is continually being sold and there is no risk of loss of evidence due to the passage of time.  Plaintiffs are entitled to full discovery on any notice issue.  (A copy of the notice is attached hereto as Exhibit 1)

## JURISDICTION AND VENUE

16.	This Court has subject matter jurisdiction over the state law claim asserted herein pursuant to 28 U.S.C. § 1332(d), (Class Action Fairness Act) in that the claims are asserted on behalf of the Class, and the matter or controversy exceeds the sum of $5 million, exclusive of interests and costs, and some members of the proposed Classes are citizens of a state different from Pilot.  There are more than 100 people in the putative class. This Court also has supplemental jurisdiction over plaintiffs' pendent state-law claims pursuant to 28 U.S.C. § 1367.

17.	This Court also has subject matter jurisdiction under 28 U.S.C. § 1331.

18.	Venue is proper in this District pursuant to 28 U.S.C. 1391(b)-(d), because a substantial part of the events giving rise to Plaintiff's claims occurred in this District, and Pilot

resides in, is licensed to do business in, does business in, has agents in, or is found or transacts business in, this District.

## PARTIES

19. Plaintiff is and at all times material was a resident of Davidson County, Tennessee. Plaintiff's car uses premium motor fuel.

20. Pilot is incorporated and has its principal place of business in Tennessee.

## FACTUAL ALLEGATIONS

21. Pilot owns and operates gas stations that are located in the state of Tennessee.

22. On December 5, 2024, Plaintiff drove to a Pilot gas station where Pilot offered the following prices per gallon for motor fuel: premium was $3.25 per gallon and regular was $2.75 per gallon.

23. Plaintiff inserted his credit card into Pilot's single-nozzle fuel dispensing system and selected premium motor fuel.

24. Plaintiff inserted the single-nozzle into his car and pumped motor fuel into his car's fuel tank.

25. Plaintiff's credit card was charged $25.00, which Pilot represented was based on his pumping six (6) gallons of premium motor fuel into his car. A copy of the receipt that Plaintiff received is shown below:



26. Plaintiff did not receive the six gallons of premium motor fuel for which he paid Pilot.

27. Plaintiff purchased premium motor fuel from Pilot directly after the prior customer had, using the same single-nozzle fuel dispensing system, pumped regular motor fuel. When Plaintiff selected the premium option and began pumping motor fuel into his car, the pump hose

and dispensing nozzle contained a residual volume of regular motor fuel from the prior customer which then became part of the first gallon of motor fuel pumped into Plaintiff's car.

28. Therefore, Plaintiff paid Pilot $3.25 for this first gallon of motor fuel when he should have paid less because that gallon contained a significant amount of lower-priced, lower-grade motor fuel.

29. Pilot is aware that it overcharged Premium Customers like Plaintiff whenever they pump gas at Pilot's gas stations when the customer before the Plaintiff used the same single-nozzle fuel dispensing system filled his or her car with lower-grade motor fuel. Pilot could easily refund Premium Customers the difference between what they paid for and what they received in return. Pilot has made a business decision to retain the overcharge as a profit as opposed to refunding the same to Premium Customers. Pilot retains the overcharge knowing that it does not own the overcharge but does not return the overcharge.

## CLASS ACTION ALLEGATIONS

30. Plaintiff brings this action on behalf of himself, and as a class action under Federal Rule of Civil Procedure 23, on behalf of the members of the following class:

- Tennessee class: All persons who purchased premium gas in Tennessee between August 7, 2019 and August 7, 2025, from Pilot with a credit card or debit card where (1) such persons used a single-nozzle fuel dispensing system, and (2) the prior customer that used the same single-nozzle fuel dispensing system purchased regular or mid-grade motor fuel.

31. The class identified above is collectively referred to as the "Class" and the periods of time applicable to the Class is collectively referred to as the "Class Periods."

32. Specifically excluded from these classes are Pilot; the officers, directors, or employees of Pilot; any entity in which Pilot has a controlling interest; and any affiliate, legal representative, heir, or assign of Pilot. Also excluded from these classes are any federal, state, or local governmental entities, any judicial officer presiding over this action and the members of his or her immediate family and judicial staff, and any juror assigned to this action.

33. Class Identity: The Class is readily identifiable and is one for which records should exist.

34. Numerosity: Plaintiffs do not know the exact number of class members because such information presently is in the exclusive control of Pilot. Plaintiff believes that there are thousands of class members geographically dispersed throughout Tennessee, such that joinder of all class members is impracticable.

35. Typicality: Plaintiff's claim is typical of the claim of the members of the Classes because Plaintiff purchased premium motor fuel from Pilot, and therefore Plaintiff's claim arise from the same common course of conduct giving rise to the claims of the Classes and the relief sought is common to the Classes.

36. Common Questions Predominate: There is a common question of fact specific to the Class that predominate over any questions affecting individual members, including:

- Whether the defendant has breached the contracts with plaintiff and plaintiff's class.

37. Adequacy: Plaintiff will fairly and adequately protect the interests of the Class in that Plaintiff's interests are aligned with, and not antagonistic to, those of the other members of the Class who purchased premium motor fuel from Pilot and Plaintiff has retained counsel competent and experienced in the prosecution of consumer class actions to represent himself and the Class.

38.     Superiority: A class action is superior to other available methods for the fair and efficient adjudication of this controversy since individual joinder of all damaged members of the Classes is impractical.  Prosecution as a class action will eliminate the possibility of duplicative litigation.  The relatively small damages suffered by individual members of the Classes compared to the expense and burden of individual prosecution of the claims asserted in this litigation means that, absent a class action, it would not be feasible for members of the Classes to seek redress for the violations of law herein alleged.  Further, individual litigation presents the potential for inconsistent or contradictory judgments and would greatly magnify the delay and expense to all parties and to the court system.  Therefore, a class action presents far fewer case management difficulties and will provide the benefits of unitary adjudication, economy of scale, and comprehensive supervision by a single court.

39.     The prosecution of separate actions by individual members of the Classes would create the risk of inconsistent or varying adjudications.

## COUNT ONE
## BREACH OF CONTRACT

40.     Plaintiff realleges and incorporates by reference as if set forth in full herein the allegations of paragraphs 1 through 39 above.

41.     Plaintiff and members of the Class agreed to pay Pilot the offered price per gallon for premium motor fuel in exchange for receiving premium motor fuel.

42.     Plaintiff and members of the Class paid the offered price per gallon for premium motor fuel using their debit or credit cards.

43.     Pilot breached the contract with Plaintiff and members of the Class by failing to deliver the full amount of premium motor fuel for which Plaintiff and members of the Class paid Pilot.

44. As a result, Plaintiff and members of the Class were damaged and seek damages pursuant to the Uniform Commercial Code plus pre and post judgment interest in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and members of the Class pray the Court for judgment against Pilot in an amount to be determined at trial under the Uniform Commercial Code for:

A. Restitutionary damages;

B. Reasonable and/or statutory attorneys' fees;

C. Costs of suit;

D. Prejudgment and post judgment interest thereon; and

E. Such other and further relief as the Court deems just, appropriate and equitable.

F. Jury demanded.

DATED: August 7, 2025

By: */s/ Gordon Ball*
Gordon Ball (BPR 001135)
gball@gordonball.com

GORDON BALL, PLLC
6104 Hickory Valley Road
Nashville, Tennessee 37205
Tel: (865) 809-4370

By: */s/ Thomas Bienert, Jr.*
Thomas Bienert, Jr.
tbienert@bklwlaw.com

BIENERT KATZMAN LITTRELL WILLIAMS LLP
903 Calle Amanecer, Suite 350
San Clemente, CA 92673
Tel: (949) 369-3700